UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

CHRISTOPHER TATE )
)
       Plaintiff, )
)
v. )
) No. 1:04-CV-379
MICHAEL WENGER, individually and in his )
official capacity. ) Chief Judge Curtis L. Collier
       Defendant. )

**MEMORANDUM**

Before the Court are Plaintiff Christopher Tate ("Plaintiff") and Defendant Michael Wenger's (Defendant) cross Motions for New Trial or in the Alternative, to Alter or Amend Judgment (Court File Nos. 111, 114) and Plaintiff's "Motion for Attorney Fees" (Court File No. 116). For the following reasons, the Court will **DENY** Plaintiff and Defendant's cross Motions for New Trial and Plaintiff's "Motion for Attorney Fees."

**I.    STANDARD OF REVIEW**

The standard of review for a motion for new trial is well established. Under Fed. R. Civ. P. 59, a court may set aside a jury verdict and grant a new jury trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). Courts have generally interpreted this language to allow a new trial when a jury has reached a "seriously erroneous result," which may occur when (1) the verdict is against the weight of the evidence; (2) the damages are excessive; or (3) the trial was unfair to the moving party in some fashion (*i.e.*, the proceedings being influenced by prejudice or bias). *Holmes v. City of*

*Massillon,* 78 F.3d 1041, 1045-46 (6th Cir. 1996) (citations omitted); *Dalton v. Roane State Community College*, 2006 WL 2167242, *1 (E.D. Tenn. July 31, 2006); *West v. Media General Operations, Inc.*, 250 F. Supp. 2d 923, 930 (E.D. Tenn. 2002)(reversed on other grounds, 120 Fed. Appx. 601 (6th Cir. 2005).. A court exercises its discretion in disposing of a motion for new trial. *See Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996); *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (limiting a court's responsibility to preventing an injustice). The district court's decision is reviewed for an abuse of discretion. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000). Reversal is warranted only if the appellate court has "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)).

In deciding whether to grant a new trial on the basis of prejudice through judicial error, the Court considers each argument under the umbrella of Fed. R. Civ. P. 61:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial . . . , unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

"[N]ew trials are not to be granted on the grounds that the verdict was against the weight of the evidence 'unless that verdict was unreasonable.'" *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000) (quoting *Holmes*, 78 F.3d at 1047). "[C]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Id.* at 821 (citing *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir.1967)). Hence, as long as a reasonable juror could have reached the challenged verdict, a new trial is improper. *Barnes*, 210

F.3d at 821 (citing *Holmes*, 78 F.3d at 1048).

II.      **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff brought this case was based upon Tennessee state law assault and battery claims and a federal civil rights claim pursuant to 42 U.S.C. § 1983. The case was tried to a jury starting on June 6, 2006 and the jury reached its verdict on June 14, 2006. The state law punitive damages aspect of the trial was held on July 25, 2006, and a verdict was rendered on the same day. The facts of this case were discussed in the memorandum accompanying the order granting partial summary judgment prior to trial and the Court will supplement those facts as needed (Memorandum, Court File No. 76). Plaintiff based his claims upon events surrounding his arrest by Chattanooga, Tennessee police officers in December 2003. He claimed he was subjected to excessive force when arrested and ill treated when he was hospitalized subsequent to arrest. Defendant denied the allegations and submitted evidence Plaintiff was on a three or four day crack induced crime spree that culminated in Plaintiff being pursued in a stolen car by members of the Chattanooga Police Department. Plaintiff admitted these allegations but testified he surrendered and raised his hands as ordered. After he surrendered, according to his testimony, he was knocked to the ground and beaten for no reason by Defendant. There were no witnesses to the events. However, Plaintiff did have photographs taken soon after the incident that showed substantial bruising and abrasions. Defendant testified he was chasing Plaintiff who did not surrender and when Plaintiff suddenly stopped and turned around, Defendant was unable to stop and ran into Plaintiff with Defendant's head contacting Plaintiff's head.

Thus, at trial two completely opposing version of events were given by Plaintiff and

Defendant. During the trial, Plaintiff attempted to ask a witness about a Chattanooga city government practice or policy that indicates in some circumstances it may choose to indemnify certain city employees and police officers for certain judgments. However, as Plaintiff's counsel later conceded, the intentional tort that resulted in a damage award is not one of the circumstances discussed in the municipal policy statement. When Plaintiff raised the indemnification issue on cross examination with a witness, Defendant objected. The Court sustained the objection and was required to repeat the decision sustaining the objection several more times as Plaintiff's counsel continued to press the question. The jury was instructed to disregard the issue of indemnity.

At the conclusion of the case the jury found Plaintiff had not proven his § 1983 claim because Defendant proved he was entitled to qualified immunity defense even though the jury determined excessive force had been used. Thus, Plaintiff did not recover on the § 1983 claim. The jury also found Plaintiff did not prove the assault claim under Tennessee law. Plaintiff did prevail on the battery claim under Tennessee state law and the jury awarded Plaintiff $26,000 in medical expenses stemming from the hospitalization after his arrest (Court File No. 106). The Court reconvened the jury on July 25, 2006 to determine if punitive damages were appropriate. The jury found Defendant acted recklessly and caused actual damages to Plaintiff and awarded $7,500 (Court File No. 109). The Court will address each motion separately.

### III. **DISCUSSION**

#### A. **Plaintiff's Motion for New Trial**

Plaintiff moves for additur, or in the alternative, a new trial arguing the jury verdict is inadequate, the jury was prejudiced by Defendant's counsel's closing arguments, and because the

Court submitted the issue of qualified immunity to the jury.

### **Motion for Additur**

The issue of additur is determined by the substantive state law of Tennessee as the damages in this case stem from the battery claim. The Tennessee additur statute states in relevant part:

> (a)(1) In cases where, in the opinion of the trial judge a jury verdict is not adequate to compensate the plaintiff or plaintiffs in compensatory damages or punitive damages, the trial judge may suggest an additur in such amount or amounts as the trial judge deems proper to the compensatory or punitive damages awarded by the jury, or both such classes of damages.

TENN. CODE ANN. § 20-10-101 (2004); *Cassidy v. Spectrum Rents*, 959 F. Supp. 823 (E.D.Tenn. 1997). Although the trial judge may suggest adjustments to a jury verdict, this is a remedy that should be used sparingly as it takes the determination out of the jury's hands. In this case, the jury awarded Plaintiff $26,000 for medical bills and $7,500 in punitive damages. The jury considered two opposing versions of the events in question. From the jury's verdict it is clear it did not fully believe Plaintiff or Defendant. Of course, the jury was free to do just that. Since the jury found for Plaintiff solely on the battery claim and against Plaintiff on all the remaining claims, one cannot say the award of damages in the amounts set by the jury is inadequate. Accordingly, the Court does not deem Plaintiff motion on this point well taken.

### **Motion for New Trial**

Plaintiff argues the statement made by Defendant's counsel that a large verdict could sentence Defendant to a lifetime of debt unfairly prejudiced the jury and warrants a new trial. If "counsel's closing argument was improper, and if there is a reasonable probability that the verdict of [the] jury has been influenced by such conduct, it should be set aside." *Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980) (internal quotation marks omitted); *accord Holmes*, 78

F.3d at 1045-46 ("[A] new trial is warranted when a jury has reached a seriously erroneous result as evidenced by . . . the proceedings being influenced by prejudice or bias.") (internal quotation marks omitted). In determining the probability of whether the verdict was improperly influenced "a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury." *Cleveland*, 624 F.2d 756. Plaintiff originally asked for $1,500,000 dollars from a police officer who does not have a high salary. Defendant's counsel reinforced to the jury that any money awarded by the jury would be paid by Defendant and that a large award would negatively impact Defendant. Although this comment was relevant to the damage award being considered by the jury, it was made once and it is common knowledge that police officers do not make large salaries. The statements by Defendant's counsel merely highlighted Defendant's financial situation. The probability is low the statement improperly influenced the jury and therefore a new trial is not warranted.

Plaintiff objects to the issue of qualified immunity being submitted to the jury because qualified immunity is an issue of law.

> While the issue of qualified immunity normally rests with the court, in cases arising under the Fourth Amendment's reasonableness standard the applicability of qualified immunity will often turn on the resolution of contested factual issues. Where, as here, the legal question of qualified immunity turns upon which version of facts one accepts, the jury, not the judge, must determine liability.

*Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000) (quotation and citation omitted). In *Fisher*, the Sixth Circuit affirmed a district court that charged the jury "to consider whether [the officer's] use of deadly force had been objectively unreasonable; that is, to resolve the continuing factual dispute as to the car's behavior as it came towards [the officer]." *Id.* In this case, the Court instructed the jury to determine if Defendant's "conduct was objectively reasonable in light of the

6

legal rules clearly established at the time of the incident." There was an ongoing factual dispute about the events which led to Plaintiff's hospitalization. Plaintiff claimed he was savagely beaten by Defendant while Defendant contended the two collided during a chase down a dark alley. It was up to the jury which version of events to believe, and the applicability of qualified immunity hinged on the factual determination made by the jury. Therefore, it was proper for the Court to instruct the jury on qualified immunity and to submit the question to the jury.

To the extent there are any remaining concerns about the propriety of submitting the question to the jury, the Court states that if it was called upon to decide the issue following the jury's determination of the facts it would also rule Defendant was entitled to qualified immunity. In other words, the Court would treat the jury's decision as an advisory verdict with the Court being responsible for making the final decision. Therefore, the Court would adopt the jury's findings.

### B. Defendant's Motion for New Trial

Defendant moves for a new trial arguing the jury was unfairly prejudiced by Plaintiff's attorney mentioning the City of Chattanooga's indemnity policy. Defendant admits the Court "did instruct the jury to ignore the statement and not to consider it in their deliberations." (Court File No. 112). Furthermore, the jury submitted a question to the Court asking "Who pays the damages? Who pays the compensatory damages? Who pays the punitive damages?" (*id.*, exh. 2). The Court instructed the jury "that any award of damages would be Michael Wenger's sole responsibility." (Court File No. 112).

"Although prejudice that affects the fairness of a proceeding can certainly be grounds for a new trial, when such prejudice is cured by instructions of the court, the motion for a new trial should

be denied." *Holmes v. City of Massillon*, 78 F.3d 1041, 1047-48 (6th Cir. 1996)(internal quotations omitted). *See also*, *e.g.*, *Smith v. Travelers Ins. Co.*, 438 F.2d 373, 375 (6th Cir. 1971)(holding in light of the curative instructions given and the context of the entire record, the improper comments of the plaintiff's attorney were not so prejudicial as to warrant a new trial); *Gandy v. Sullivan County*, 24 F.3d 861, 866 (6th Cir. 1994)(finding a new trial was not warranted because "in sum, the two alleged errors were ameliorated by the jury charge at the close of the trial"). In this case, the Court instructed the jury to ignore the question relating to indemnity asked by Plaintiff's counsel. Although Plaintiff's counsel did press the question but in a short time span, the Court sustained the objection each time. Furthermore, the Court instructed the jury at the close of evidence:

> During the trial I did not let you hear the answers to some of the questions that the lawyers asked. You must completely ignore such matters. Do not even think about them. Do not speculate about what a witness might have said. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Courts "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)(citation omitted). *See also Holmes*, 78 F.3d at 1047 ("There is ordinarily a presumption that a jury will follow [a court's] curative instructions.")(citing *United States v. Gomez-Pabon*, 911 F.2d 847, 858 (1st Cir. 1990)). There is no "overwhelming probability" the jury did not follow the Court's instructions and the evidence was not "devastating" to Defendant because the Court later answered a jury question and stated Defendant would be solely responsible for any damages clearing up any possible confusion among the jurors. The Court's instruction for the jury to disregard Plaintiff's

8

counsel's question at the time it was stated and the instruction given to the jury to disregard such statements is sufficient, and no new trial is warranted under these circumstances.

### C. Attorney's Fees

Plaintiff argues he is entitled to attorney's fees pursuant to Rule 54 of the Federal Rules of Civil Procedure and 42 U.S.C. § 1988. In an action to under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Title 42, United States Code, Section 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Plaintiff is entitled to attorney's fees if he is a "prevailing party" under the statute. As stated by the United States Supreme Court:

> To qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement . . . . In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). In this case, Plaintiff did prevail on his state law claim but the question that must be answered is whether Plaintiff prevailed on a fee-generating claim.

The United States Court of Appeals for the Sixth Circuit has not decided the issue before the Court. However, the United States Court of Appeals for the Second, Third, Fourth, Fifth and Eighth Circuits have held attorney's fees are not appropriate in a case where the plaintiff fails on the constitutional claim while prevailing on the state grounds. *See McDonald v. Doe*, 748 F.2d 1055,

1057 (5th Cir. 1984). In *McDonald*, the court acknowledged that in some instances attorney's fees are appropriate where a plaintiff prevails only on state law claims. *Id.* at 1056. However, this is only appropriate where a court fails to reach the constitutional question or issue because of the "reluctance of federal courts to decide constitutional questions if a nonconstitutional claim is dispositive." *Id.* The *McDonald* court pointed out there is a large distinction between a case that is decided on state law claims related to undecided substantial constitutional claims and a case where the constitutional claims have been decided against the plaintiff. The Fourth Circuit faced a similar case and explained:

> Concededly, the legislative history of the Fees Act [§ 1988] supports the award of fees in such circumstances where the trial court has declined to pass upon the constitutional claim. However, we find nothing in the statute, the legislative history, or decisions on the subject which would require or justify an award of attorney's fees in a case where the plaintiff has lost on the constitutional issue after a plenary trial. Accordingly, the denial of fees in this case was proper.

*Haywood v. Ball*, 634 F.2d 740, 743 (1980)(citation omitted). Likewise, the Third Circuit held:

> the district court did reach both the federal constitutional question and the related state law question, and here we have concluded that the claimant of the attorney's fees has not prevailed in the § 1983 claim. Thus, the question reduces itself to one of statutory construction: if, as a result of an adjudication, one is the losing and not the prevailing party on a § 1983 claim, may he be entitled nevertheless to attorney's fees on the strength of his success on a related state law claim? We do not think so. . . . The statute plainly limits fee awards to "the prevailing party" "[in] any action or proceeding to enforce a provision of [section] 1983." The losing party is not the prevailing party; what is black cannot be called white.

*Luria Bros. & Co. v. Allen*, 672 F.2d 347, 357 (3rd Cir. 1982)(quoting 42 U.S.C. § 1983). This Court is persuaded by the reasoning of the circuits that have addressed this issue.

In this case, the excessive force claim under 42 U.S.C. § 1983 is a fee-generating right but the state law battery claim is not a fee-generating right. A jury verdict found Plaintiff had proven his excessive force claim under Section 1983 but also found that Defendant proved his

10

defense of qualified immunity. Although Plaintiff proved excessive force was used, Defendant's qualified immunity prevented "actual relief" that "materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. 111-12. However, the jury did find Plaintiff proved his battery claim arising under Tennessee state law. Plaintiff did satisfy the "prevailing party" definition on his state claim because he was awarded $26,000 for medical expenses and $7,500 in punitive damages. However, the state law claim is not a fee-generating claim. Because Plaintiff did not prevail on a fee generating claim under 42 U.S.C. § 1988, attorney's fees are not appropriate.

**IV.     CONCLUSION**

For the reasons stated above, the Court will **DENY** Plaintiff and Defendant's cross Motions for New Trial (Court File Nos. 111, 114) and Plaintiff's "Motion for Attorney Fees" (Court File No. 116).

An Order Shall Enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**